**COLONIAL MOLASSES CO., Inc.,**
v.
**UNITED STATES.**

**C. D. 1840; Protest No. 150646–K.**

United States Customs Court,
Third Division.
Jan. 22, 1957.

Sharretts, Paley & Carter, New York City (Howard Clare Carter and Joseph F. Donohue, New York City, of counsel), for plaintiff.

George Cochran Doub, Asst. Atty. Gen., Samuel D. Spector, Trial Atty., New York City, for defendant.

Before JOHNSON and DONLON, Judges.

DONLON, Judge.

The question raised by plaintiff's protest is whether this merchandise, 50 cans of bees' honey, product of Cuba and imported from that country at the port of New York on March 5, 1948, is entitled to liquidation at a duty rate that gives effect to the 20 per centum reduction provided by the convention, commonly known as the Cuban Reciprocity Treaty of 1902, 33 Stat. 2136. It is the plaintiff's claim that this merchandise is entitled to the Cuban preferential reduction in duty rate. The collector liquidated the entry at the rate of 1 cent per pound provided under paragraph 716, Tariff Act of 1930, 19 U.S.C.A. § 1001, par. 716, as modified by the General Agreement on Tariffs and Trade, T.D. 51802, 61 Stat. A3, without reduction for Cuban preference.

By proclamation of President Harry S. Truman, Proclamation No. 2764, U.S. Code Cong.Serv.1948, p. 2507, the Cuban Trade Agreement, concluded August 24, 1934 (T.D. 47232), 49 Stat. 3559, was revised, effective January 1, 1948 (T.D. 51819), 61 Stat. 3699, 62 Stat. 2051A, pursuant to the authority of section 350 of the Tariff Act of 1930, as amended, 19 U.S.C.A. § 1351. This 1948 revision was contemporaneous with, and pursuant to the same statutory authority as, the General Agreement on Tariffs and Trade (T.D. 51802). Since the merchandise in this case was imported March 5, 1948, it is the duties proclaimed under the revised Cuban treaty of 1948 that apply to the merchandise before us.

After various provisions, including preferential reduction in duties for named classes of merchandise, the Cuban Trade Agreement of 1934 had provided that the operation of the provisions of the 1902 treaty (or convention) are "suspended" on the day on which the 1934 agreement comes into force, but that the 1902 treaty automatically returns to operation on the expiration or denunciation of the 1934 trade agreement.

The revision, made effective January 1, 1948, by Presidential proclamation, provided that the 1902 Cuban treaty and also the 1934 trade agreement would be inoperative during the period when the United States and Cuba are both contracting parties to the General Agreement on Tariffs and Trade, *supra.* (There were interim treaty and tariff revisions and related Presidential proclamations between 1934 and 1948, which do not affect the issue before us and, therefore, need not be considered here.) Both countries were contracting parties to the General Agreement on Tariffs and Trade, *supra*, on March 5, 1948, and still are.

Bees' honey was included among the enumerated classifications in the 1934 trade agreement with Cuba, and it was there expressly granted a preferential reduction of 20 per centum of the most-favored-nation rate, but was dutiable in any event at not more than the rate of 0.012 cents per pound under paragraph 716. In the 1948 revision, this expressed preferential reduction of 20 per centum was eliminated, and the general agreement rate of 0.01 cent per pound was provided. Plaintiff makes no claim that this is not so.

Plaintiff contends, however, that duty on bees' honey has been increased by suspension, or the rendering inoperative, of the 1902 commercial convention, and that this duty increase was not authorized by Congress. There is, as

noted above, no dispute as to regular duty rate under the general agreement, but only as to applicability of the Cuban preferential reduction of 20 per centum.

Both parties having submitted, the issues presented are before us for decision. We shall, however, first dispose of defendant's motion to dismiss plaintiff's protest "on the ground that there is no issue before the court, * * * and that there is nothing for this court to pass upon that is new or novel," that is, on the ground of *stare decisis*. (R. p. 4.)

On the first ground stated by defendant, namely, that there is no issue before the court, the motion should be denied. There is an issue, as defendant's second ground for motion concedes. The fact that there is an issue, whether or not it has previously been decided, precludes judgment on defendant's motion to dismiss. The plaintiff is entitled to his day in court, and it is for the court to decide whether the rule of *stare decisis* is applicable. We hold it is not applicable on the facts before us. The motion is denied.

We now proceed to consider the merits of the issue that is before us. This has been extensively argued and briefed.

It is true, as plaintiff argues, that the issue before this court in Marianao Sugar Trading Corporation v. United States, 29 Cust.Ct. 275, C.D. 1481 was not the same as the issue here presented.

In the Marianao case, plaintiff claimed the right to Cuban preferential reduction of 20 per centum of the internal revenue tax levied on importations of Cuban sugar in 1947 and 1949. The same Cuban treaty was effective in 1949 as in 1948. The differences in the treaty that was effective in 1947 are not material to this issue.

There was no issue in the Marianao case as to preferential reduction of regular duties, which is the issue here. The decision of this court in that case turned on its holding that "while the additional tax was, in fact, a customs duty for the reasons claimed, Article II of the Cuban

treaty [of 1902] granted the preferential reduction only with respect to regular duties accruing under tariff acts, and that by the terms of Article IX of that treaty additional charges or taxes were treated separately, the only guarantee being that they would be assessed without discrimination in relation to like articles from other countries." Pages 279, 280, citing Faber, Coe & Gregg (Inc.) v. United States, 19 C.C.P. A., Customs 8, T.D. 44851. Judge Ekwall proceeded to review, in a scholarly and comprehensive opinion, the further issue as to whether the suspension of the 1902 treaty was valid. Defendant argued there that the attack on legality of the provisions suspending or abrogating the Cuban Treaty of 1902 presented questions not before the court, and that a ruling on the validity of such suspension would have no bearing on the judgment in that case. It may be noted that defendant now takes the contrary position, namely, that the Marianao decision, supra, is *stare decisis* of that issue. We do not agree.

When the Marianao case reached our appeals court, the decision there (41 C. C.P.A., Customs, 236, C.A.D. 557) turned solely on the internal revenue tax issue. The court made the following observation as to the issue of invalidity of the President's action in suspending the treaty of 1902, as follows, at page 242 of the published decision:

"Other subsidiary issues have been raised by the appellant which we consider totally irrelevant to the one isolated and controlling question principally discussed herein. It is well, however, to note that in accordance with the Trade Agreements Act, *supra*, the President negotiated various Cuban Trade Agreements, the first of which was effective September 3, 1934. That agreement, as well as subsequent agreements between the two nations, modified and rendered inoperative the general 20 per cent preferential granted in Article II of the Cuban Treaty of 1902 under condi-

tions stated in such agreements. The appellant has persistently urged that the President thereby exceeded the authority delegated to him by the Trade Agreements Act and that such agreements are henceforth invalid. *We do not regard a discussion of such point as necessary.*" [Emphasis supplied.]

The Cuban Treaty of 1902 was made effective by congressional act and not merely by Senate approval. The duty provisions, including the preferential reduction of 20 per centum, thus became domestic law, as well as a foreign treaty negotiated by the President.

The Trade Agreements Act of 1934 (48 Stat. 943) is, likewise, an act of Congress. It was pursuant to the authority of that act, as extended, that the Cuban Trade Agreement of 1934 was negotiated and revised and duties thereunder proclaimed. To the extent of the authority conferred on the President by Congress, such proclaimed duties likewise are domestic law.

Section 350(b) of the Trade Agreements Act was further amended in 1949, but it is the section as it was on March 5, 1948, which controls our decision. As subparagraph (b) then read, the Trade Agreements Act neither prevents the preferences granted by the 1902 Cuban Treaty from being applied to new rates of duty established by trade agreements concluded with countries other than Cuba, nor precludes the President from giving effect to an exclusive trade agreement with Cuba modifying the existing preferential customs treatment of any article the growth, produce, or manufacture of Cuba, provided only that such changes shall not increase or decrease duties "however established, existing on January 1, 1945 (even though temporarily suspended by Act of Congress)" by more than 50 per centum.

The rate on honey imported from Cuba, established January 1, 1945, was 0.012 cents per pound, except as it might be reduced by a most-favored-nation rate. There is no evidence that it had been reduced. The President proceeded, in exercise of authority conferred on him by Congress, to change the existing duty on bees' honey, product of Cuba, by eliminating the general preferential reduction of 20 per centum through the mechanism of continuing the inoperative status of the 1902 Cuban treaty and proclaiming that status as well as a new rate of 0.01 cent per pound under the General Agreement on Tariffs and Trade, *supra.* Even if the cited language of section 350(b) means (and this is far from clear) that the Presidential authority to raise or lower duty on Cuban imports must take into account, as the basis for increase or decrease, the temporarily suspended treaty of 1902, the duty on honey imported from Cuba is, nevertheless, within the permitted 50 per centum adjustment.

For the reasons stated, plaintiff's claim is overruled. Judgment will be rendered for defendant.